**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| IN RE HVAC EQUIPMENT ANTITRUST LITIGATION | No. 2:26-cv-10949-SKD-EAS |
| *This document relates to:* ALL ACTIONS | Hon. Susan K. DeClercq |

**AAON DEFENDANTS' MOTION TO DISMISS**

AAON, Inc. (Nevada), AAON, Inc. (Oklahoma), AAON Coil Products, Inc., and BASX, Inc (collectively, the "AAON Defendants" or "AAON"), by and through their counsel, hereby move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss all claims in the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint ("DPP"), the End-User Indirect Purchaser Plaintiffs' Amended Class Action Complaint ("EUIPP"), and the Commercial Indirect Purchaser Plaintiffs' Consolidated Amended Class Action Complaint ("CIPP") (collectively, the

"Complaints"). ECF Nos. 129, 130, 133. In support of the foregoing Motion, the AAON Defendants state as follows:

1. The AAON Defendants base this Motion upon the accompanying memorandum of law in support and such other and further material as the Court may consider.

2. As required by E.D. Mich. Local Rule 7.1(a), counsel for AAON sought concurrence from counsel for Plaintiffs on August 12, 2026, via telephone conference. During that call, counsel for AAON explained the nature of this Motion and its legal basis and requested, but did not obtain, concurrence in the relief sought (i.e., dismissal of the Complaints).

Dated: October 9, 2026

Respectfully submitted,

*/s/ Dylan I. Ballard*
Dylan I. Ballard
Michael W. Scarborough
Vinson & Elkins LLP
555 Mission St., Ste. 2000
San Francisco, CA 94105
Tel.: (415) 979-6900
mscarborough@velaw.com
dballard@velaw.com

Craig P. Seebald
Marisa Poncia
Vinson & Elkins LLP
2000 Pennsylvania Ave., Ste. 500 W.
Washington, DC 20037
Tel.: (202) 639-6500

cseebald@velaw.com
rponcia@velaw.com

Max A. Aidenbaum (P78793)
L. Pahl Zinn (P57516)
Dickinson Wright PLLC
500 Woodward Ave., Ste. 4000
Detroit, MI 48226
Tel.: (313) 223-3500
maidenbaum@dickinsonwright.com
pzinn@dickinsonwright.com

*Counsel for Defendants AAON, Inc. (Nevada), AAON, Inc. (Oklahoma), AAON Coil Products, Inc., and BASX, Inc.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| IN RE HVAC EQUIPMENT ANTITRUST LITIGATION | No. 2:26-cv-10949-SKD-EAS |
| *This document relates to:*<br>ALL ACTIONS | Hon. Susan K. DeClercq |

**MEMORANDUM IN SUPPORT OF AAON DEFENDANTS' MOTION TO DISMISS**

# **TABLE OF CONTENTS**

I. STATEMENT OF ISSUES PRESENTED ..................................................... i
II. CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF SOUGHT ..................................................................................................... ii
III. INTRODUCTION ........................................................................................ 1
IV. SUMMARY OF RELEVANT ALLEGATIONS ............................................ 3
V. LEGAL STANDARD ..................................................................................... 4
VI. ARGUMENT ................................................................................................ 5
A. Plaintiffs' Allegations That AAON Is A Custom Manufacturer Are Irreconcilable With Their Commodity-Market Conspiracy Theory. ..................... 5
B. The Complaints Fail to Allege Any Facts Tying AAON to the Alleged Conspiracy. ................................................................................................ 8
VII. CONCLUSION ........................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)....................1, 6, 10

*In re Concrete & Cement Additives Antitrust Litig.*,
2026 WL 2594002 (S.D.N.Y. Sep. 2, 2026) ....................5

*In re Concrete & Cement Additives Antitrust Litigation*,
2025 WL 1755193 (S.D.N.Y. June 25, 2025) ....................2, 7, 8

*Craftsmen Limousine, Inc. v. Ford Motor Co.*,
491 F.3d 380 (8th Cir. 2007) ....................2, 6

*In re Dynamic Random Access Memory Indirect Purchaser Litig.*,
2020 WL 8459279 (N.D. Cal. Nov. 24, 2020), *aff'd sub nom. In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42 (9th Cir. 2022) ....................6, 7

*Erie Cnty., Ohio v. Morton Salt, Inc.*,
702 F.3d 860 (6th Cir. 2012) ....................12

*Jones v. Micron Tech. Inc.*,
400 F. Supp. 3d 897 (N.D. Cal. 2019)....................12

*LaFlamme v. Societe Air France*,
702 F. Supp. 2d 136 (E.D.N.Y. 2010)....................8

*In re Omnicare, Inc. Sec. Litig.*,
769 F.3d 455 (6th Cir. 2014) ....................4

*In re Passenger Vehicle Replacement Tires Antitrust Litig.*,
767 F. Supp. 3d 681 (N.D. Ohio 2025) ....................8

*In re RealPage, Inc. Rental Software Antitrust Litig. (No. II)*,
709 F. Supp. 3d 478 (M.D. Tenn. 2023) ....................7

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
552 F.3d 430 (6th Cir. 2008) ....................................................................4

*In re Travel Agent Comm'n Antitrust Litig.*,
583 F.3d 896 (6th Cir. 2009) ....................................................................4

*Weiner v. Klais & Co.*,
108 F.3d 86 (6th Cir. 1997) ....................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................4

**Other Authorities**

6 P. Areeda & H. Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* (May 2026)..........................................6

# I. STATEMENT OF ISSUES PRESENTED

1. Whether Plaintiffs state a claim for relief under Section 1 of the Sherman Act when Plaintiffs' own allegations that AAON manufactures "highly customized" and "highly configurable" products are irreconcilable with their commodity-market price-signaling conspiracy theory.

2. Whether Plaintiffs state a claim for relief under Section 1 of the Sherman Act when the Complaints fail to allege any particularized facts tying AAON to the alleged conspiracy—including any participation in industry trade association activities, use of data aggregating tools, engagement in price signaling, or coordinated restrictions on manufacturing output.

## II. CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF SOUGHT

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

*Craftsmen Limousine, Inc. v. Ford Motor Co.*, 491 F.3d 380 (8th Cir. 2007)

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008)

*In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009)

*Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860 (6th Cir. 2012)

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 28 F.4th 42 (9th Cir. 2022)

*In re Concrete & Cement Additives Antitrust Litig.*, 2025 WL 1755193 (S.D.N.Y. June 25, 2025)

*In re Concrete & Cement Additives Antitrust Litig.*, 2026 WL 2594002 (S.D.N.Y. Sept. 2, 2026)

## III. INTRODUCTION

The AAON Defendants do not belong in this case.[1]

Plaintiffs premise their entire "price signaling" conspiracy theory on the assertion that "HVAC Equipment products are fungible, homogenous commodity products with little differentiation," such that "one supplier's type is readily substituted for another supplier." CIPP ¶ 139; DPP ¶ 86; EUIPP ¶¶ 8, 288–292.[2] Indeed, Plaintiffs *need* that premise because, as Plaintiffs acknowledge and courts have consistently observed, price-signaling conspiracies are implausible when products are not interchangeable. *See, e.g.,* CIPP ¶ 141 ("Markets for commodity products are susceptible to collusion" because "[d]emand for a commodity depends primarily, if not exclusively, on price" allowing conspirators to "monitor compliance and detect defectors"); *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 238–39 (1993) ("tacit coordination" is only possible where there are "fungible products, and a small number of variables upon which the firms seeking

[1] The "AAON Defendants" (or collectively, "AAON") are AAON, Inc. (Nevada), AAON, Inc. (Oklahoma), AAON Coil Products, Inc., and BASX, Inc. The AAON Defendants join fully in the arguments presented in Defendants' concurrently-filed Joint Motion to Dismiss and separately bring this individual motion to present additional arguments that are specific to AAON.

[2] The Direct Purchaser Plaintiffs' Consolidated Class Action Complaint ("DPP"), the End-User Indirect Purchaser Plaintiffs' Amended Class Action Complaint ("EUIPP"), and the Commercial Indirect Purchaser Plaintiffs' Consolidated Amended Class Action Complaint ("CIPP") collectively are the "Complaints." ECF Nos. 129, 130, 133.

to coordinate their pricing may focus"; existence of non-fungible products that were not subject to price lists "would have made such tacit collusion unmanageable.").

Yet Plaintiffs *affirmatively allege* that the AAON Defendants *do not manufacture or sell* commodity products. Instead, the Complaints correctly describe AAON as a manufacturer of "highly customized" and "highly configurable" commercial HVAC equipment. *See, e.g.,* CIPP ¶¶ 54–56; EUIPP ¶¶ 89–91; DPP ¶¶ 58–60. These admissions make Plaintiffs' bare assertion that the AAON Defendants participated in a price signaling conspiracy implausible on its face. A manufacturer that builds each product to a customer's unique specifications, negotiates pricing project-by-project, and lacks standardized list prices, cannot plausibly participate in a commodity-market price-signaling conspiracy. *See, e.g., Craftsmen Limousine, Inc. v. Ford Motor Co.*, 491 F.3d 380, 393 (8th Cir. 2007); *In re Concrete & Cement Additives Antitrust Litigation*, 2025 WL 1755193, at *14 (S.D.N.Y. June 25, 2025). Any "signal" sent by AAON regarding the pricing of one of its bespoke products would have been irrelevant to another manufacturer's pricing of commodity products, just as any "signal" sent by such a manufacturer would have been meaningless to AAON.

Not surprisingly given this threshold defect, the Complaints also fail to allege against AAON any of the core facts that Plaintiffs claim plausibly indicate the existence of a conspiracy. Plaintiffs do not allege that: (1) AAON ever held a seat

on the Air-Conditioning, Heating, and Refrigeration Institute's ("AHRI") Board of Directors, participated in an AHRI committee, or attended an AHRI event, *see, e.g.,* CIPP ¶¶ 90–95; (2) AAON ever participated in any of the other industry organizations or events identified in the Complaints as supposed "opportunities to collude," *see id.*, ¶¶ 143–156; (3) AAON ever used any "data aggregating tools" or otherwise engaged in competitor-price "monitoring," *see* EUIPP ¶¶ 295–307, DPP ¶¶ 194–202; or (4) AAON ever reduced production during the alleged relevant period.

The AAON Defendants should be dismissed from these cases with prejudice.

## IV. **SUMMARY OF RELEVANT ALLEGATIONS**

AAON, Inc. is a manufacturer of premium commercial HVAC equipment. CIPP ¶ 53; EUIPP ¶ 88; DPP ¶¶ 57, 91. AAON does not manufacture residential HVAC equipment. *Id.* AAON operates through three subsidiaries, each focused on different segments of the commercial market: (1) AAON, Inc. (Oklahoma), which produces "highly configurable" commercial HVAC equipment; (2) AAON Coil Products, Inc., which manufactures "semi-custom and custom" coil and air-handling products; and (3) BASX, Inc., which designs and builds "custom," "high-performance," "highly customized" solutions for data centers, clean rooms, and other mission-critical environments. EUIPP ¶¶ 88–91, DPP ¶¶ 57–60; CIPP ¶¶ 53–56.

The Complaints incorporate industry analysis that further describes AAON's differentiated market position.[3] *See* Umbrex, *AAON Strategy and Business Model*, https://umbrex.com/resources/company-profiles/aaon/ (last accessed Sept. 11, 2026). The Umbrex report describes AAON as "a premium commercial HVAC manufacturer" and explains that AAON makes HVAC products where "efficiency, customization, acoustics, reliability, and lifecycle cost often matter more than lowest upfront price." *Id.* The report calls AAON's strategy "differentiation": equipment that is "more configurable, more energy efficient, and better suited to demanding applications than lower-cost standardized alternatives." *Id.*

## V. <u>**LEGAL STANDARD**</u>

To survive a motion to dismiss, allegations that a particular defendant participated in an antitrust conspiracy must plausibly establish the relevant "who, what, where, when, how or why." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008). "Generic pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy," is insufficient. *Id.* at 436; *see also In re Travel Agent*

[3] Because the Umbrex report is referenced and relied upon in the Complaints (EUIPP ¶ 94; DPP ¶ 160), it is properly considered under Rule 12(b)(6). *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 468–69 (6th Cir. 2014) (taking judicial notice of documents that the complaint referenced or quoted); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (documents referred to in a complaint may be considered on a motion to dismiss).

*Comm'n Antitrust Litig.,* 583 F.3d 896, 905–906 (6th Cir. 2009) (dismissal required where the complaint failed to "specify how . . . defendants are involved in the alleged conspiracy" but merely lumped defendants and defendants' executives in an "indeterminate" manner). "Post-*Twombly* authorities overwhelmingly hold that a complaint that provides no basis to infer the culpability of the specific defendants named in the complaint fails to state a claim." *In re Concrete & Cement Additives Antitrust Litig*., 2026 WL 2594002, at *23 (S.D.N.Y. Sep. 2, 2026).

## VI. <u>ARGUMENT</u>

### A. Plaintiffs' Allegations That AAON Is A Custom Manufacturer Are Irreconcilable With Their Commodity-Market Conspiracy Theory.

Plaintiffs' conspiracy theory depends on the premise that all products affected by the supposed conspiracy are standardized, interchangeable "commodities." CIPP ¶¶ 138–142; DPP ¶ 86, 191; EUIPP ¶¶ 8, 288–292. Plaintiffs themselves explain why this premise is so crucial:

> Markets for commodity products are susceptible to collusion. Demand for a commodity depends primarily, if not exclusively, on price as opposed to other attributes such as product quality or customer service. As a result, cartel members can more easily monitor compliance and detect defectors.
>
> Any observed price discrepancies for commodities are more likely to expose cheating because they cannot as readily be attributed to other factors such as special product features, quality, reliability, durability, or other terms of a transaction.

CIPP ¶¶ 141–142.

By their very nature, customized products hinder the ability of competitors to coordinate through signaling: any pricing information about a customized product is difficult to observe and impossible to signal to a competitor in any meaningful way. *See, e.g., Brooke Grp. Ltd.*, 509 U.S. at 238–39; 6 P. Areeda & H. Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1430, p. 179–80 (May 2026) (existence of "made-to-order goods" make "oligopolistic coordination . . . very unlikely indeed" because "[d]ifferent buyer preferences for different product brands or configurations complicate the process of observation, coordination, or retaliation" needed to effect a tacit conspiracy).

Accordingly, courts consistently recognize that price-signaling theories are implausible where pricing is complex and varied due to differentiated products. *See, e.g., In re Dynamic Random Access Memory Indirect Purchaser Litig.*, 2020 WL 8459279, at *6–7 (N.D. Cal. Nov. 24, 2020), *aff'd sub nom. In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42 (9th Cir. 2022) (dismissing price-fixing claims, holding that allegations of "price signaling" were implausible where there were no published, comparable prices); *Craftsmen Limousine.*, 491 F.3d at 393–94 ("individually negotiated" sales of custom limousines made "detection of cheating" and "punishment of firms that 'cheat' on any price-fixing agreement difficult if not impossible," undermining the alleged conspiracy).

Plaintiffs' specific allegations about AAON confirm the problem. The Complaints describe AAON's products as "highly configurable," "semi-custom," "custom," and "highly customized." CIPP ¶ 54–56; EUIPP ¶ 89–91; DPP ¶¶ 58–60, 91. Those allegations make Plaintiffs' commodity-market theory implausible as to AAON: a custom-product manufacturer has no standardized "list price" to fix, and unique, project-by-project transactions are not readily comparable or monitorable. *See In re Concrete*, 2025 WL 1755193, at *14 (dismissing price-fixing claims and precluding an inference of parallel conduct where defendants' pricing actions targeted "differing subsets of the alleged market" across "different geographic regions and *product lines*, and at different times," as distinguished from markets exhibiting a "*high degree of standardization*" among products) (emphasis added).

Plaintiffs' allegations are irreconcilable, and courts dismiss antitrust claims when a complaint's own allegations contradict its conspiracy theory. *See In re RealPage, Inc. Rental Software Antitrust Litig. (No. II)*, 709 F. Supp. 3d 478, 529–530 (M.D. Tenn. 2023) ("contradictory" allegations within a complaint are "implausible" and cannot survive a motion to dismiss); *In re DRAM*, 28 F.4th at 50–51 (affirming dismissal where the complaint's own allegations contradicted its theory of conspiracy). This contradiction independently compels dismissal of all claims against the AAON Defendants.

**B. The Complaints Fail to Allege Any Facts Tying AAON to the Alleged Conspiracy.**

Not surprisingly given that AAON does not participate in the alleged commodity HVAC market, the Complaints also fail to plausibly allege that AAON participated in any way in the alleged conspiracy.

Indeed, Plaintiffs cannot even meet their threshold burden of plausibly alleging that AAON engaged in "consciously parallel" conduct—similar actions in close temporal proximity under circumstances suggesting coordination rather than independent decision-making. *See, e.g., In re Passenger Vehicle Replacement Tires Antitrust Litig.,* 767 F. Supp. 3d 681, 743 (N.D. Ohio 2025); *Concrete*, 2025 WL 1755193, at *13; *LaFlamme v. Societe Air France*, 702 F. Supp. 2d 136, 151 (E.D.N.Y. 2010).

Instead, the Complaints affirmatively allege that AAON engaged in *non-parallel* conduct. According to Plaintiffs:

- AAON's pricing changes were limited to "select commercial" equipment—consistent with its business model of manufacturing only "highly customized" commercial products. EUIPP ¶ 149; CIPP ¶ 101; DPP ¶¶ 111, 114, 121.

- With respect to these discrete products, AAON took a "novel approach" to pricing: a rolling 1% monthly increase that allegedly departed from what other manufacturers were doing. DPP ¶ 121; CIPP ¶ 125; EUIPP ¶ 184.

- AAON did not raise prices at all in 2020—the onset of the alleged conspiracy.[4]

- AAON did not announce any price increases in 2023 or 2024. DPP ¶¶ 125–132; CIPP ¶¶ 103–106; EUIPP ¶¶ 193–221.

- AAON did not implement any price increase in 2025, instead implementing a temporary "surcharge" in response to tariffs. DPP ¶ 133.

- AAON *did* announce a 5% price increase for select products on November 18, 2019, effective December 5, 2019—*before* the alleged conspiracy supposedly began. DPP ¶ 108; EUIPP ¶ 144. Thus, Plaintiffs fail to allege any change in AAON's pricing behavior after the supposed inception of the alleged conspiracy.

Moreover, even if Plaintiffs could allege that AAON engaged in parallel conduct, they fail to connect AAON to *any* of their four "mechanisms" through which the alleged conspiracy supposedly operated: (1) participation in industry trade associations, (2) use of competitive benchmarking tools, (3) "the public signaling of price increases," or (4) "coordinated restrictions on manufacturing output." DPP ¶¶ 5, 83; EUIPP ¶¶ 4, 295, 309; CIPP ¶¶ 90–95, 111–20, 161–63.

<u>Trade Associations</u>. Plaintiffs cannot allege that AAON engaged in any of the trade association activities alleged in the Complaint. They do not allege that AAON held a seat on the AHRI Board of Directors, a supposed conduit for conspiratorial discussions, DPP ¶¶ 95–101, and no AAON representative is alleged to have

---

[4] Plaintiffs allege AAON announced a 4% price increase in October 2020, but this price increase did not take effect until January 11, 2021. CIPP ¶ 101; DPP ¶ 111; EUIPP ¶ 149.

participated in an AHRI Committee, or even attended an AHRI event, let alone discussed pricing there. Likewise, Plaintiffs do not allege any AAON conduct with respect to Heating, Air-conditioning, and Refrigeration Distributors International ("HARDI"), the Morgan Stanley Laguna Conference, the Nexstar Network Super Meeting, or the Barclays Industrial Select Conference. DPP ¶¶ 136–40; EUIPP ¶¶ 231–32; CIPP ¶¶ 11–12, 154.

Data Aggregating Tools. Plaintiffs do not allege that AAON used Pricefx, Convergence Data, or any other supposed "aggregating tool" for competitive intelligence. DPP ¶¶ 194–202.

Price Signaling. Finally, the Complaints fail to allege that AAON participated in the purported price-signaling mechanism. Their signaling theory depends on Defendants publicly announcing standardized list-price increases that competitors could observe and match. CIPP ¶¶ 139–143, 161; DPP ¶¶ 5, 83, 86; EUIPP ¶¶ 4, 8, 288–289. But as demonstrated in Section VI.A above, AAON's custom, specification-driven products lack standardized list prices, making public price signaling implausible. A manufacturer that prices each project individually based on customer specifications cannot send or receive meaningful price "signals" to or from competitors selling standardized commodity equipment. *See Brooke Grp. Ltd.*, 509 U.S. at 238–39. AAON's price announcements—covering only "select commercial"

equipment—cannot plausibly serve as coordination signals in a commodity-pricing conspiracy. EUIPP ¶ 149; CIPP ¶ 101; DPP ¶¶ 111, 114, 121.

Production Restrictions. There is no allegation that AAON restricted its manufacturing output, reduced production capacity, or otherwise limited the availability of its products. To the contrary, the Complaints paint the opposite picture of AAON's production trajectory: the Q1 2026 earnings call (DPP ¶ 159; EUIPP ¶ 254) shows AAON was expanding capacity and increasing production—with BASX sales up 72% year-over-year, record sales, substantial capital expenditures, and outsourcing to meet demand. *See* AAON, Inc., Earnings Call Transcript, FQ1 2026.

In addition to failing to link AAON to any of these four "mechanisms," the Complaints fail to allege that AAON ever communicated about HVAC pricing (or any other competitively sensitive information), in any format, with anyone—let alone its alleged co-conspirators. The Complaints identify only one alleged communication involving AAON, in which a Lennox employee allegedly told an AAON employee that Lennox's "lead times" were 50 weeks. DPP ¶ 215; EUIPP ¶ 323. There is nothing remotely sensitive about this remark, let alone anything from which a price-fixing conspiracy could be inferred. When the comment was made in 2022—the height of the global supply-chain crisis—lead times were a universal topic of conversation across virtually every industry, just as COVID-19 dominated public discourse in 2020. *See* CIPP ¶ 100; DPP ¶ 110; EUIPP ¶ 1. Further, Plaintiffs

do not allege that this one-time remark was even relevant to either company's pricing decisions, much less that either company took any action based on it. *See Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 868 (6th Cir. 2012) (requiring evidence that would "tend[] to exclude the possibility that the [defendants] acted independently") (internal citation omitted).

That leaves Plaintiffs with a few scattered public statements by AAON referring to pricing "discipline" as evidence of conspiracy. EUIPP ¶ 178; DPP ¶¶ 159–160. Those allegations must be read in context with the Umbrex report on which Plaintiffs rely, which emphasizes AAON's "recipe for winning" as "differentiation." Umbrex, *AAON Strategy and Business Model*; *see supra* Section IV; *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 919 (N.D. Cal. 2019) (routine corporate disclosures "are insufficient to support an inference of conspiracy because they are not 'largely inconsistent with unilateral, lawful conduct.'") (internal citation omitted). "Disciplined" pricing of customized products cannot possibly support an inference of participation in a commodity-market price-fixing conspiracy.

## VII. CONCLUSION

For the foregoing reasons, and the additional reasons set forth in Defendants' Joint Motion to Dismiss, the AAON Defendants respectfully request that this Court dismiss them from the Complaints with prejudice.

Dated: October 9, 2026

Respectfully submitted,

/s/ Dylan I. Ballard
Dylan I. Ballard
Michael W. Scarborough
Vinson & Elkins LLP
555 Mission St., Ste. 2000
San Francisco, CA 94105
Tel.: (415) 979-6900
mscarborough@velaw.com
dballard@velaw.com

Craig P. Seebald
Marisa Poncia
Vinson & Elkins LLP
2000 Pennsylvania Ave., Ste. 500 W.
Washington, DC 20037
Tel.: (202) 639-6500
cseebald@velaw.com
rponcia@velaw.com

Max A. Aidenbaum (P78793)
L. Pahl Zinn (P57516)
Dickinson Wright PLLC
500 Woodward Ave., Ste. 4000
Detroit, MI 48226
Tel.: (313) 223-3500
maidenbaum@dickinsonwright.com
pzinn@dickinsonwright.com

*Counsel for Defendants AAON, Inc. (Nevada), AAON, Inc. (Oklahoma), AAON Coil Products, Inc., and BASX, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on October 9, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Dylan I. Ballard*
Dylan I. Ballard